# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PAULA KAY HEDGEPETH,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No. 15-0067-CG-C** |
| | ) | |
| **ROBERT BENTLEY,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## OF CHIEF JUSTICE ROY MOORE

### I.    Introduction

As Governor Bentley correctly described in his Memorandum of Law in Support of his Motion to Dismiss (Doc. 17), the Complaint in this case "is an apparent, hurry-up attempt to entice this Court to issue relief against Mobile County Probate Judge Don Davis and members of his office staff based upon the refusal of Judge Davis to open the division of his office which issues marriage licenses on Monday, February 9, 2015." (*Id.*, at 2.)  In addition to seeking the issuance of Alabama marriage licenses, the Complaint also requests damages (Doc. 1, ¶ 9), injunctive relief (*Id.*, ¶ 10), and sanctions (*Id.*, ¶ 11) against the Governor and the Attorney General for "hav[ing] failed

and refused to execute this Court's Orders" (*Id.*, ¶ 7), and against the Chief Justice for having "issued an Order directing the Probate Courts to disobey this Court's Orders." (*Id.*, ¶ 5.)

Only three pages in length, one page of which is devoted to the case caption, the Complaint omits the required statement of the grounds for this Court's jurisdiction, Rule 8(a)(1), Fed. R. Civ. P., and provides no information about Plaintiffs apart from the listing of their names in the caption.  Although Plaintiffs' claims for damages, injunctive relief, and sanctions against the Chief Justice (Doc. 1, ¶¶ 9-11) appear to rest solely upon this Court's "two Orders striking down the Alabama Sanctity Laws," (*Id.*, ¶ 1) the Complaint fails to allege what remedial action, if any, this Court has ordered against the Chief Justice.  Thus, the Complaint fails to specify a basis for the Chief Justice's alleged "willful refusal to comply with this Court's Orders."  (*Id.*, ¶ 11.)

The claim of a civil rights violation under 42 U.S.C. § 1983 (Doc. 1, ¶ 9) is not connected to any facts in the Complaint.  The request for an emergency injunction (*Id.*, ¶ 10) is unaccompanied by a motion for a temporary restraining order or a preliminary injunction.  *See* Rule 65(a), Fed. R. Civ. P.  The request for sanctions (Doc. 1, ¶ 11) relies upon a generalized claim of "willful refusal to comply with this Court's Orders," but fails to specify any orders of this Court with which the Chief Justice was obliged to comply or any rules or statutes that he has purportedly violated.

2

The Complaint on its face thus fails to show that Plaintiffs are entitled to relief. Rule 8(a)(2), Fed. R. Civ. P.

## II.    Standard of Review.

"In ruling on a motion to dismiss, ... courts 'must take all of the factual allegations in the complaint as true,' but [they] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Wood v. Moss,* 134 S. Ct. 2056, 2065 n.5 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A motion to dismiss should be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. "'[T]his basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 233-34 (3d ed. 2004), quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Haw. 1953)).

## III.    Factual Background

1.      Plaintiffs in this action are sixteen individuals who "sought marriage licenses from the Probate Court of Mobile County, Alabama," on February 9, 2015,

believing that they were entitled to obtain marriage licenses that day, but who learned that the marriage license office was closed.[1]  (Doc. 1, at caption & ¶¶ 3-4.)  The allegations in the Complaint support an inference that all Plaintiffs sought a license to marry a person of the same sex.  (*Id.*, ¶ 4.)

2.      Plaintiffs alleged that they were entitled to marriage licenses on February 9, 2015, because "[t]his Court recently issued two Orders striking down the Alabama Sanctity Laws (Alabama Const. Art. I § 36.03 (2006) and Ala. Code 1975 § 30-1-19) as being unconstitutional pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment."  (Doc. 1, ¶ 1.)  Although not identified with specificity in the Complaint, the two orders of this Court to which Plaintiffs referred are presumably this Court's Order entered on January 23, 2015, in *Searcy v. Strange,* No. 14-208-CG-N, and its Order entered on January 26, 2015, in *Strawser v. Strange,* No. 14-424-CG-N.[2]

3.      Plaintiffs' sole allegation against Chief Justice Moore is that on February

---

[1]The name Kristy Simmons appears twice among the list of pPlaintiffs in the caption of the Complaint. The list of Plaintiffs on page 2 of the Civil Cover Sheet indicates that this dual listing is an inadvertent duplication.

[2]When ruling on a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., a court may "take judicial notice of the court documents from [another] action." *Lozman v. City of Riviera Beach,* 713 F.3d 1066, 1076 n.9 (11th Cir. 2013) (citing Rule 201(b), Fed. R. Evid.).

8, 2015, he "issued an Order directing the Probate Courts to disobey this Court's Orders" in *Searcy* and *Strawser.* (Doc. 1, ¶ 5.)  A copy of Chief Justice Moore's Administrative Order of February 8, 2015 (hereinafter "Administrative Order"), is attached hereto as Exhibit A.  The Chief Justice's Letter and Memorandum to the Alabama Probate Judges of February 3, 2015, which were incorporated fully by reference into the Administrative Order, are attached hereto as Exhibits B and C.[3]

4.    On February 9, 2015, the same day that Plaintiffs filed this action, this Court in *Searcy v. Strange* denied a motion of the plaintiffs in that case to hold Probate Judge Don Davis in contempt for "not open[ing] the marriage license division of the Mobile County Probate Court."  Judge Davis, this Court held, "is not a party in this case and the Order of January 23, 2015, did not directly order Davis to do anything." This Court's Order of February 9, 2015, in *Searcy* is attached hereto as Exhibit D.  *See supra*, note 2.

5.    Also on February 9, 2015, Plaintiffs in *Strawser* moved to amend their complaint to add Judge Davis as a party.  On February 10, 2015, this Court granted that

---

[3]"'Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim.'" *Laskar v. Peterson,* 771 F. 3d 1291, 1295 n.3 (11th Cir. 2014) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)).  *See also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997) (noting that "attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment").

motion.

6.      On February 12, 2015, in *Strawser*, this Court entered a preliminary injunction against Judge Davis that adopted the reasoning in *Searcy* that Art. I § 36.03, Ala. Const. 1901, and § 30-1-19, Ala. Code 1975, violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  The Court enjoined "Judge Don Davis and all of his officers, agents, servants, and employees and others in active concert or participation with any of them" from "refusing to issue marriage licenses to plaintiffs due to the Alabama laws which prohibit same-sex marriage."

7.      On February 13, 2015, Plaintiffs and the Mobile County Defendants in this action filed a joint Stipulation for Dismissal of the claims against Judge Davis,  Joe McEarchin, Jr., the Clerk of the Mobile County Probate Court, and Mark Erwin, the Chief of Staff of the Mobile County Probate Court.  (Doc. 16.)  The stipulation requested this Court "to dismiss the lawsuit as to each of the above-named defendants, with prejudice ...."  (*Id.*).

8.      On February 24, 2015, this Court entered the requested order of dismissal with prejudice (Doc. 20), leaving this case pending against Governor Robert Bentley, Chief Justice Moore, and Attorney General Luther Strange.

9.      On March 3, 2015, the Alabama Supreme Court issued a decision in *Ex parte State ex rel. Alabama Policy Institute*, No. 1140460, 2015 WL 892752 (Ala.

Mar. 3, 2015), that ordered Jefferson County Probate Judge Alan L. King, Chilton County Probate Judge Robert M. Martin, Madison County Probate Judge Tommy Ragland, and Montgomery County Probate Judge Steven L. Reed "to discontinue the issuance of marriage licenses to same-sex couples" on the ground that "[n]othing in the United States Constitution alters or overrides" their "ministerial duty not to issue any marriage license contrary to [Alabama] law." The decision also temporarily enjoined Alabama's remaining probate judges, except Judge Davis, "from issuing any marriage licenses contrary to Alabama law." Judge Davis was ordered to advise the Alabama Supreme Court "whether he is bound by any existing federal court order regarding the issuance of any marriage license other than the four marriage licenses he was ordered to issue in *Strawser*." After receiving a response from Judge Davis, the Alabama Supreme Court added him to the mandamus proceeding as a respondent "subject to this Court's order of March 3, 2015." *Ex parte State ex rel. Alabama Policy Institute*, No. 1140460, 2015 WL 1036064 (Ala. Mar. 10, 2015).

## IV.    Argument

### A.    Plaintiffs' Failure to State a Claim upon which Relief Can be Granted

#### 1.    Inadequate Allegation

The only factual allegation in the Complaint that pertains to Chief Justice Moore

is that on February 8, 2015, he "issued an Order directing the Probate Courts to disobey this Court's Orders." (Doc. 1, ¶ 5.)  Plaintiffs' conclusory allegation that the Chief Justice directed the probate courts " to disobey this Court's Orders" fails to qualify as a claim for relief.  "This court has consistently held that conclusory allegations without specific supporting facts have no probative value."  *Evers v. General Motors Corp.*, 770 F. 2d 984, 986 (11th Cir. 1985).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions ...." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft. v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

## 2.    Inaccurate Allegation

The Administrative Order, as a matter of fact, does not, as alleged by Plaintiffs, order the probate judges "to disobey this Court's Orders."[4]  Instead, the Administrative

---

[4]Because the Administrative Order is integral to the Complaint against the Chief Justice, it may be addressed in this motion to dismiss without converting the motion to one for summary judgment.

> [W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule

Order  explains why the probate judges of Alabama were not bound by the order of January 23, 2015, in *Searcy v. Strange* (No. 14-208-CG-N) and the order of January 26, 2015, in *Strawser v. Strange* (No. 14-424-CG-C).

- • The sole defendant in those cases was the Attorney General of Alabama.

- • No probate judge was a defendant in either case.

- • Because the probate judges as members of the judicial branch were neither in privity nor acting in concert with the Attorney General, an executive branch official, this Court's orders in *Searcy* and *Strawser* did not bind them.  *See* Rule 65(d)(2), Fed. R. Civ. P.

This Court acknowledged those facts when it denied a motion to hold Judge Don Davis in contempt: "Probate Judge Don Davis is not a party in this case and the Order of January 23, 2015, did not directly order Davis to do anything."  Exhibit D, *Searcy v. Strange*, Order of February 9, 2015 (Doc. 72), at 2 (footnote omitted).

A person cannot disobey an order to which that person is not bound.  As the plain language of the Administrative Order and the confirming order of this Court demonstrate, no probate court was bound by the order of January 23 in *Searcy* or the

---

12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.

*Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997). *See also supra*, note 3.

order of January 26 in *Strawser*. *See* Exhibit A, Administrative Order, at 2 (noting that "the United States District Court for the Southern District of Alabama has not issued an order directed to the Probate Judges of Alabama to issue marriage licenses that violate Alabama law"). The Chief Justice's careful and correct analysis of this Court's orders obviously does not constitute "refusal to comply with this Court's orders," much less "willful refusal." (Doc. 1, ¶ 11.) Plaintiffs simply have not alleged any facts that might entitle them to relief against the Chief Justice based upon his Administrative Order.

Because Plaintiffs have failed "to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570, Chief Justice Moore is entitled to an order dismissing him from this case.

### B.   Mootness

#### 1.   The Absence of a Case or Controversy

This Court's Order of February 24, 2015, dismissing with prejudice Probate Judge Don Davis and his clerk of court and chief of staff, removed from this case the only parties who have authority under state law to issue marriage licenses. *See* § 30-1-9, Ala. Code 1975. None of the remaining Defendants have such authority. Because the only parties in the case who could grant the relief sought by Plaintiffs have been dismissed with prejudice, the Court is no longer able to provide the relief requested.

Accordingly, the case is moot and the Court has lost jurisdiction. "Federal courts do not have jurisdiction under the Article III 'Case or Controversy' provision of the United States Constitution to decide questions rendered moot by reason of intervening events." *Westmoreland v. National Transp. Safety Bd.*, 833 F.2d 1461, 1462 (11th Cir. 1987). "When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). "The case must be viable at all stages of the litigation; it is not sufficient that the controversy was live only at its inception." *C & C Products, Inc. v. Messick*, 700 F.2d 635, 636 (11th Cir. 1983). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Fla. Dep't of Health*, 225 F.3d at 1217.

## 2. The Superseding Effect of an Alabama Supreme Court Opinion on the Availability of Prospective Relief

Whatever effect the Chief Justice's Administrative Order may have had upon the actions of the Mobile County Probate Judge in the issuance of marriage licenses has been superseded by the opinion of the Alabama Supreme Court of March 3, 2015, and subsequent orders. *Ex parte State ex rel. Alabama Policy Institute*, No. 1140460, 2015 WL 892752 (Ala. Mar. 3, 2015); *Ex parte State ex rel. Alabama Policy Institute*, No.

1140460, 2015 WL 1036064 (Ala. Mar. 10, 2015). The Chief Justice issued the Administrative Order in his official capacity as administrative head of the Unified Judicial System. *See* Exhibit A, Admin. Order at 1 (citing Art. VI, § 149, Ala. Const. 1901). The probate judges are part of the Unified Judicial System. *Id.* (citing Art. VI, § 139(a), Ala. Const. 1901). The Alabama Code authorizes and empowers the Chief Justice to take appropriate action to "alleviate any condition or situation adversely affecting the administration of justice within the state." § 12-2-30(b)(7), Ala. Code 1975. The administrative power vested in the Chief Justice, however, is inferior to the authority of the Alabama Supreme Court "to issue such remedial writs or orders as may be necessary to give it *general* supervision and control of courts of inferior jurisdiction." Art. VI, § 140(b), Ala. Const. 1901 (emphasis added). *See Ex parte State ex rel. James,* 711 So. 2d 952, 964 (Ala. 1998) (noting that "action by the Chief Justice is not synonymous with action by the 'Court'"). *See also Ex parte State ex rel. Alabama Policy Institute*, 2015 WL 892752, at *14 (noting "this Court's *ultimate* responsibility for the orderly administration of justice in this State") (emphasis added); § 12-5-20, Ala. Code 1975 (authorizing the Justices of the Supreme Court "to review, countermand, overrule, modify or amend any administrative decision by ... the Chief Justice").

The authority of the probate judges of Alabama to issue marriage licenses that

contradict Alabama law is now subject to a writ of mandamus from the Alabama Supreme Court that supersedes the Administrative Order of the Chief Justice. Any action this Court might take in relation to the Administrative Order, therefore, would, at this juncture, be futile and meaningless. "[A]n [action] should therefore be dismissed as moot when, by virtue of an intervening event, a [district court] cannot grant 'any effectual relief whatever.'" *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

### C.    Eleventh Amendment Immunity

The Eleventh Amendment bars this Court from exercising jurisdiction over Chief Justice Moore in his official capacity. When he issued the Administrative Order, Chief Justice Moore was acting in his official capacity. *See* Art. VI, § 149, Ala. Const. 1901; § 12-2-30(b), Ala. Code 1975; Exhibit A, Administrative Order, at 1. The Eleventh Amendment prohibits "suits ... commenced or prosecuted against one of the United States ...." U.S. Const., Amendment XI. *See Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (holding that "the Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest"). "Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), however, there is a long and well-recognized exception to this rule for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law."

*Summit Medical*, 180 F.3d at 1336.  However, "the theory of *Young* has not been provided an expansive interpretation."  *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102 (1984).

Because, as explained above, the Alabama Supreme Court's decision of March 3, 2015, has superseded the Administrative Order, any allegation of an *ongoing* violation of federal law in regard to the Administrative Order has been mooted.  Accordingly, prospective relief under *Ex parte Young* is unavailable.  "[T]he *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. ... In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct."  *Summit Medical*, 180 F.3d at 1337.  Because "deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment," *Green v. Mansour*, 474 U.S. 64, 68 (1985), the *Ex parte Young* exception does not apply.  The Eleventh Amendment, therefore, requires the dismissal of Chief Justice Moore from this action on the ground of sovereign immunity.

### D.    Qualified Immunity from Damages Claims

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government

official first must prove that he was acting within the scope of his discretionary authority." *Cottone v. Jenne*, 326 F.3d. 1352, 1357-58 (11th Cir. 2003). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). *See* § B(2), *supra*, for a discussion of the Chief Justice's exercise of his administrative authority in issuing the Administrative Order. A plaintiff's burden is twofold:

> [T]o survive a motion to dismiss, [a plaintiff] must satisfy the two-pronged qualified-immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were "clearly established" when the defendant committed the act complained of. A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other.

*Morris v. Town of Lexington Alabama*, 748 F. 3d 1316, 1322 (11th Cir. 2014) (citations omitted).

As demonstrated above, the sole fact alleged against Chief Justice Moore -- that he "issued an Order directing the Probate Courts to disobey this Court's Orders" -- is manifestly false. Therefore, under the first prong of the qualified-immunity test, Plaintiffs have failed to allege that any action of the Chief Justice constituted a violation of their constitutional rights. Under the second prong, "existing precedent must have

placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). Neither the Eleventh Circuit nor the United States Supreme Court, however, have recognized the existence of a constitutional right to marry a person of the same sex. A public official "cannot be held to a standard of conduct which is unsettled by the Supreme Court or this circuit at the time of his actions which are questioned." *Courson v. McMillian*, 939 F.2d 1479, 1498 (11th Cir. 1991). A ruling of a federal district court does not create clearly-established law. "[A] district court case, cannot clearly establish the law in this Circuit." *Glenn v. City of Columbus, Ga.*, 375 F. App'x 928, 934 (11th Cir. 2010). *See also Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) (noting that federal district court decisions "cannot clearly establish the law because ... they are not authoritative as precedent"). The United States District Court for the Middle District of Alabama, for instance, has recently stated that it is not bound by this Court's order in *Searcy*. *Hard v. Bentley*, No. 13–922–WKW-SRW (M.D. Ala. March 10, 2015).

A ruling of the Alabama Supreme Court, however, can clearly establish law in this state. "[C]learly established law in this circuit may include court decisions of the highest state court in the states that comprise this circuit as to those respective states, when the state supreme court has addressed a federal constitutional issue that has not been addressed by the United States Supreme Court or the Eleventh Circuit." *Courson*,

16

939 F.2d at 1498 n.32.  On March 3, 2015, the Alabama Supreme Court held that the United States Constitution does not recognize a marriage right for same-sex couples. *See Ex parte State ex rel. Alabama Policy Institute*, *supra*.

Because Chief Justice Moore has qualified immunity from any claims for damages, the individual-capacity claims must be dismissed.

## V.     Conclusion

For the reasons set forth herein, Plaintiffs' claims against Chief Justice Moore, in his official and individual capacities, are due to be dismissed.

Respectfully submitted this 17th day of March, 2015.

Attorneys for Chief Justice Roy Moore

s/ J. Douglas McElvy
J. Douglas McElvy (ASB-6013-V74J)
Elizabeth C. Wible (ASB-1925-W61E)
MCELVY LAW FIRM
2740 Zelda Road, Fourth Floor
Montgomery, AL 36106
Tel: (334) 293-0567
Fax: (334) 293-0565
dmcelvy@mcelvylaw.com
ewible@mcelvylaw.com

s/ Herbert W. Titus
Herbert W. Titus*
William J. Olson*
WILLIAM J. OLSON, P.C.
370 Maple Ave. W., Suite 4
Vienna, VA 22180
U.S. JUSTICE FOUNDATION
932 D Street, Suite 2
Ramona, CA 92065
(703) 356-5070
wjo@mindspring.com

* Motions for admission *pro hac vice* forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of March, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christine Cassie Hernandez
David Graham Kennedy
Harry V. Satterwhite
Joseph Michael Druhan, Jr.
Algert S. Agricola, Jr.
David Byrne, Jr.
James W. Davis
Laura Elizabeth Howell

s/ J. Douglas McElvy
Of Counsel

# Exhibit A

**STATE OF ALABAMA -- JUDICIAL SYSTEM**

**ADMINISTRATIVE ORDER OF THE**
**CHIEF JUSTICE OF THE SUPREME COURT**

WHEREAS, pursuant to Article VI, Section 149, of the Constitution of Alabama, the Chief Justice of the Supreme Court of Alabama is the administrative head of the judicial system; and

WHEREAS, pursuant to § 12-2-30(b)(7), Ala. Code 1975, the Chief Justice is authorized and empowered to "take affirmative and appropriate action to correct or alleviate any condition or situation adversely affecting the administration of justice within the state"; and

WHEREAS, pursuant to § 12-2-30(b)(8), Ala. Code 1975, the Chief Justice is authorized and empowered to "take any such other, further or additional action as may be necessary for the orderly administration of justice within the state, whether or not enumerated in this section or elsewhere"; and

WHEREAS, pursuant to Article VI, Section 139(a), of the Constitution of Alabama, the Probate Judges of Alabama are part of Alabama's Unified Judicial System; and

WHEREAS, pursuant to Article XVI, Section 279, of the Constitution of Alabama, the Probate Judges of Alabama are bound by oath to "support the Constitution of the United States, and the Constitution of the State of Alabama"; and

WHEREAS, as explained in my Letter and Memorandum to the Alabama Probate Judges, dated February 3, 2015, and incorporated fully herein by reference, the Probate Judges of Alabama are not bound by the orders of January 23, 2015 and January 28, 2015 in the case of <u>Searcy v. Strange</u> (No. 1:14-208-CG-N) (S.D. Ala.) or by the order of January 26, 2015 in <u>Strawser v. Strange</u> (No. 1:14-CV-424-CG-C) (S.D. Ala.); and

WHEREAS, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the aforementioned orders bind only the

Alabama Attorney General and do not bind the Probate Judges of Alabama who, as members of the judicial branch, neither act as agents or employees of the Attorney General nor in concert or participation with him; and

WHEREAS, the Attorney General possesses no authority under Alabama law to issue marriage licenses, and therefore, under the doctrine of Ex parte Young, 209 U.S. 123 (2008), lacks a sufficient connection to the administration of those laws;

WHEREAS, the Eleventh Amendment of the United States Constitution prohibits the Attorney General, as a defendant in a legal action, from standing as a surrogate for all state officials;

WHEREAS, the separation of powers provisions of the Alabama Constitution, Art. III, §§ 42 and 43, Ala. Const. 1901, do not permit the Attorney General, a member of the executive branch, to control the duties and responsibilities of Alabama Probate Judges; and

WHEREAS, the Probate Courts of Alabama fall under the direct supervision and authority of the Chief Justice of the Supreme Court as the Administrative Head of the Judicial Branch; and

WHEREAS, the United States District Court for the Southern District of Alabama has not issued an order directed to the Probate Judges of Alabama to issue marriage licenses that violate Alabama law; and

WHEREAS, the opinions of the United States District Court for the Southern District of Alabama do not bind the state courts of Alabama but only serve as persuasive authority; and

WHEREAS, some Probate Judges have expressed an intention to cease issuing all marriage licenses, others an intention to issue only marriage licenses that conform to Alabama law, and yet others an intention to issue marriage licenses that violate Alabama law, thus creating confusion and disarray in the administration of the law; and

WHEREAS, the Alabama Department of Public Health has redrafted marriage license forms in contradiction to the public statements of Governor Bentley to uphold the Alabama Constitution, and has sent such forms to all Alabama Probate Judges, creating further inconsistency in the administration of justice; and

WHEREAS, cases are currently pending before The United States District Court for the Middle District of Alabama and the United States District Court for the Northern District of Alabama that could result in orders that conflict with those in <u>Searcy</u> and <u>Strawser</u>, thus creating confusion and uncertainty that would adversely affect the administration of justice within Alabama; and

WHEREAS, if Probate Judges in Alabama either issue marriage licenses that are prohibited by Alabama law or recognize marriages performed in other jurisdictions that are not legal under Alabama law, the pending cases in the federal district courts in Alabama outside of the Southern District could be mooted, thus undermining the capacity of those courts to act independently of the Southern District and creating further confusion and uncertainty as to the administration of justice within this State; and

WHEREAS Article I, Section 36.03, of the Constitution of Alabama, entitled "Sanctity of marriage," states:

(a) This amendment shall be known and may be cited as the Sanctity of Marriage Amendment.

(b) Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting this unique relationship in order to promote, among other goals, the stability and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.

3

(c) Marriage is a sacred covenant, solemnized between a man and a woman, which, when the legal capacity and consent of both parties is present, establishes their relationship as husband and wife, and which is recognized by the state as a civil contract.

(d) No marriage license shall be issued in the State of Alabama to parties of the same sex.

(e) The State of Alabama shall not recognize as valid any marriage of parties the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction regardless of whether a marriage license was issued.

(f) The State of Alabama shall not recognize as valid any common law marriage of parties of the same sex.

(g) A union replicating marriage of or between persons of the same sex in the State of Alabama or in any other jurisdiction shall be considered and treated in all respects as having no legal force or effect in this state and shall not be recognized by this state as a marriage or other union replicating marriage.

and

WHEREAS § 30-1-9, Ala. Code 1975, entitled "Marriage, recognition thereof, between persons of the same sex prohibited," states:

(a) This section shall be known and may be cited as the "Alabama Marriage Protection Act."

(b) Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting the unique relationship in order to promote, among other goals, the stability

4

and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.

(c) Marriage is a sacred covenant, solemnized between a man and a woman, which, when the legal capacity and consent of both parties is present, establishes their relationship as husband and wife, and which is recognized by the state as a civil contract.

(d) No marriage license shall be issued in the State of Alabama to parties of the same sex.

(e) The State of Alabama shall not recognize as valid any marriage of parties of the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction regardless of whether a marriage license was issued.

and

WHEREAS, neither the Supreme Court of the United States nor the Supreme Court of Alabama has ruled on the constitutionality of either the Sanctity of Marriage Amendment or the Marriage Protection Act:

**NOW THEREFORE, IT IS ORDERED AND DIRECTED THAT:**

To ensure the orderly administration of justice within the State of Alabama, to alleviate a situation adversely affecting the administration of justice within the State, and to harmonize the administration of justice between the Alabama judicial branch and the federal courts in Alabama:

**Effective immediately, no Probate Judge of the State of Alabama nor any agent or employee of any Alabama Probate Judge shall issue or recognize a marriage license that is inconsistent with Article 1, Section 36.03, of the Alabama Constitution or § 30-1-19, Ala. Code 1975.**

Should any Probate Judge of this state fail to

follow the Constitution and statutes of Alabama as stated, it would be the responsibility of the Chief Executive Officer of the State of Alabama, Governor Robert Bentley, in whom the Constitution vests "the supreme executive power of this state," Art. V, § 113, Ala. Const. 1901, to ensure the execution of the law. "The Governor shall take care that the laws be faithfully executed." Art. V, § 120, Ala. Const. 1901. "'If the governor's "supreme executive power" means anything, it means that when the governor makes a determination that the laws are not being faithfully executed, he can act using the legal means that are at his disposal.'" Tyson v. Jones, 60 So. 3d 831, 850 (Ala. 2010) (quoting Riley v. Cornerstone, 57 So. 3d 704, 733 (Ala. 2010)).

DONE on this 8th day of February, 2015.

_____
Roy S. Moore
Chief Justice

Exhibit B



## ADMINISTRATIVE OFFICE OF COURTS
### 300 Dexter Avenue
### Montgomery, Alabama 36104-3741
### (334) 954-5000

Roy S. Moore
Chief Justice

February 3, 2015

Rich Hobson
Administrative Director of Courts

**Re:     Federal Intrusion into State Sovereignty**

Dear Probate Judges of Alabama:

Attached hereto is a Memorandum with regard to the orders of United States District Judge Callie Granade dated January 23 and January 26, 2015, and the subsequent "Order Clarifying Judgment" dated January 28. The Memorandum presents substantial authority in support of the proposition that state courts are not bound by the opinions of lower federal courts. Furthermore, nothing in the orders of Judge Granade *requires* Alabama probate judges to issue marriage licenses that are illegal in Alabama. Pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, Alabama probate judges are not subject to those orders because the probate judges are not parties or associated with any party in those cases. I further submit that the federal district court lacked jurisdiction over these cases under the Eleventh Amendment to the United States Constitution, as explained in the appendix attached to the memorandum.

My letter to Governor Robert Bentley on January 27, 2015, expressed "serious, legitimate concerns about the propriety of federal court jurisdiction over the Alabama Sanctity of Marriage Amendment, Art. I, § 36.03, Ala. Const 1901."

The day after my letter was released, Judge Granade issued a "clarifying" order that warned the probate judges of this state that "if the stay is lifted, the Judgment in this case makes it clear, that Ala. Const. Art. I, § 36.03 and Ala. Code § 30-1-19 are unconstitutional." Yet, paradoxically, that order of clarification quoted from an opinion of a Florida federal judge that stated: "The preliminary injunction now in effect thus does *not* require the Clerk to issue licenses to other applicants." (Emphasis added). Neither Judge Granade's orders nor her "clarification" ordered the state officials who are charged with the responsibility to issue marriage licenses *to do anything.* Consequently, the injunction and the stay or the lifting thereof can only apply to the sole defendant, the Alabama Attorney General.

The attached Memorandum demonstrates that both state and federal law recognize the principle that state courts are not bound by the judicial opinions of federal district or appeals courts on questions of federal constitutional law. While state courts may consider as "persuasive authority" the opinions of federal courts that are beneath the United States Supreme Court (referred to as lower or "inferior Courts" in Article III, Sec. 1 of the U.S. Constitution), the state courts are not bound by such rulings.

Under the principle of "dual sovereignty," the authority of state courts to interpret the federal Constitution is equal to that of the lower federal courts for the simple reason that both state and federal courts are equally sworn to uphold the United States Constitution. Only the United States Supreme Court can be the final arbiter of constitutional disputes between state and federal courts.

While my disagreement with Judge Granade's orders in the cases attacking Alabama marriage law has been criticized as "religious," "defiant," and "unethical," my actions are entirely consistent with my responsibility as Chief Justice of the Alabama Supreme Court. As Administrative Head of the Unified Judicial System, I am charged with the responsibility "to take affirmative and appropriate action to correct or alleviate any condition or situation adversely affecting the administration of justice within this state." § 12-2-30(b)(7), Ala. Code 1975. I am further charged with the obligation to "take any such further or additional action as may be necessary for the orderly administration of justice within this state." § 12-2-30(b)(8), Ala. Code 1975. Interference with the right of state courts to make independent judgments based on their own view of the U.S. Constitution is a violation of state sovereignty. Moreover, the *amicus curiae* briefs of Governor Robert Bentley and of the Alabama Probate Judges Association filed with the Eleventh Circuit Court of Appeals make it very clear that "substantial" and even "mass" confusion will result if Judge Granade's orders are construed to apply to the entire state court system. Pursuant to my authority under Alabama law, I submit this advisory letter and memorandum as appropriate and necessary to the orderly administration of the Alabama Unified Judicial System and to warn against any unlawful intrusion into the jurisdiction and sovereignty of this state and its courts.

The authority of the federal judiciary to redefine marriage is now before the United States Supreme Court because a conflict exists among the federal Courts of Appeals on this issue. The United States Constitution contains neither the word "family" nor the word "marriage." The power to redefine these fundamental institutions of society is not enumerated in any of the provisions of Article 1, Section 8. Because the power to define marriage is not delegated to the United States, it is retained by the people. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States

respectively, *or to the people*." Amend. X, U.S. Const. (emphasis added).

Marriage has long been recognized as a divine institution ordained of God. According to the United States Supreme Court, the basic foundation of marriage and family upon which our Country rests is "the union for life of one man and one woman in the holy estate of matrimony." *Murphy v. Ramsey*, 114 U.S. 15, 45 (1885) (quoted in *United States v. Bitty*, 208 U.S. 393, 401 (1908)). The Alabama Supreme Court has described marriage as a "divine institution" imposing upon the parties "higher moral and religious obligations than those imposed by any mere human institution or government." *Hughes v. Hughes*, 44 Ala. 698, 703 (1870). In *Smith v. Smith*, 141 Ala. 590, 592, 37 So. 638, 639 (1904), our Supreme Court referred to marriage as a "sacred relation." More recently, the people of Alabama amended our state constitution to provide that marriage is a "sacred covenant, solemnized between a man and a woman" and that a " marriage contracted between individuals of the same sex is invalid in this state." Art. 1 § 36.03, Ala. Const. 1901.

The right to enter into the institution of marriage, namely a union between one man and one woman, is established in history and law as a fundamental right. Although not enumerated in the Constitution, that right is retained by the people under the Ninth Amendment: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

The freedom to marry is an "unalienable right." *The Declaration of Independence* states: "We hold these truths to be self evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that *among these* are Life, Liberty, and the Pursuit of Happiness . . . ." Even Judge Granade's order, quoting *Loving v. Virginia*, 388 U.S. 1, 11 (1967), acknowledges that "'[t]he freedom to marry has long been recognized as one of the vital personal *rights* essential to the orderly *pursuit of happiness* by free men' and women." No court or other human authority should pretend to redefine that right. Such an enterprise would disregard the Bill of Rights contained in the United States Constitution as well as the Organic Law of our Country.

Lower federal courts are without authority to impose their own interpretation of federal constitutional law upon the state courts. Furthermore, they have absolutely no legitimate authority to compel state courts to redefine marriage to include persons of the same sex. Not only is the Mobile federal court acting without constitutional authority, but it is doing so in a manner inconsistent with the Eleventh Amendment to the United States Constitution.

I urge you to uphold and support the Alabama Constitution and the Constitution of the United States to the best of your ability, So Help You God!

Page 3 of 4

Submitted for your consideration this 3rd day of February, 2015.

Roy S. Moore
Chief Justice
Alabama Supreme Court

Exhibit C

**MEMORANDUM**

TO:       Alabama Probate Judges

FROM:     Chief Justice Roy S. Moore

RE:       Sanctity of Marriage ruling

Date:     February 3, 2015

_____

The purpose of this memorandum is to provide guidance to the probate judges of Alabama as to their duties under Alabama's Sanctity of Marriage Amendment ("the Amendment"), Art. I, § 36.03, Ala. Const. 1901, and the Alabama Marriage Protection Act ("the Act"), § 30-1-19, Ala. Code 1975, in light of the recent orders of the United States District Court for the Southern District of Alabama. A news story has quoted the Honorable Greg Norris, President of the Alabama Probate Judges Association, as saying: "I don't think I have had a week like this in my life."[1] I hope this memorandum will assist weary, beleaguered, and perplexed probate judges to unravel the meaning of the actions of the federal district court in Mobile, namely that the rulings in the marriage cases do not require you to issue marriage licenses that are illegal under Alabama law.

_____

[1]Brian Lawson, <u>With Alabama Same-sex Marriage Decision Looming, Some Probate Judges Stop Doing Weddings</u>, AL.com (Jan. 29, 2015).

## I. Background

On Friday, January 23, 2015, the Honorable Callie Granade, a judge of the United States District Court for the Southern District of Alabama, ruled in <u>Searcy v. Strange</u> (No. 1:14-208-CG-N) (S.D. Ala. Jan. 23, 2015), that the Amendment and the Act were unconstitutional. On January 25, in response to a motion by defendant Luther Strange, the Attorney General of Alabama, Judge Granade granted a stay of her ruling until February 9 to permit the United States Court of Appeals for the Eleventh Circuit to consider imposing a stay pending appeal. On February 3, the Eleventh Circuit declined to enter the requested stay.

On Monday, January 26, Judge Granade entered a preliminary injunction in <u>Strawser v. Strange</u> (No. 1:14-CV-424-CG-C) (S.D. Ala. Jan. 26, 2015), another case that challenged the constitutionality of the Amendment and the Act. Two days later, on January 28, Judge Granade issued an "Order Clarifying Judgment" in <u>Searcy</u> to address whether her order of January 23 bound "the Probate Courts in Alabama."

## II. Administrative Authority of the Chief Justice

As administrative head of the Unified Judicial System,[2] I have a constitutional and a statutory obligation to provide guidance to the probate judges in this state as to their administrative responsibilities under these recent orders.[3] In that capacity I am authorized and empowered:

> ....
>
> (7) To take affirmative and appropriate action to correct or alleviate any condition or situation adversely affecting the administration of justice within the state.
>
> (8) To take any such other, further or additional action as may be necessary for the orderly administration of justice within the state, whether or not enumerated in this section or elsewhere.

§ 12-2-30(b), Ala. Code 1975.

In my estimation, Judge Granade's orders in Searcy and Strawser have created a "situation adversely affecting the administration of justice within the state" that requires me "[t]o take ... action for the orderly administration of justice within the state."

---

[2]"The chief justice of the supreme court shall be the administrative head of the judicial system." Art. VI, § 149, Ala. Const. 1901.

[3]The probate judges are part of Alabama's unified judicial system. Art. VI, § 139(a), Ala. Const. 1901.

3

III. Analysis

A.  Alabama probate judges are not bound by the orders in Searcy and Strawser.

In Searcy, an adoption case, Judge Granade enjoined the Attorney General from enforcing the Alabama marriage laws that prohibit recognition of same-sex unions. In Strawser, Judge Granade granted a preliminary injunction against enforcement of these same laws. Her order included standard language describing the scope of an injunction. See Rule 65, Fed. R. Civ. P.

> [T]he court hereby ORDERS that the Alabama Attorney General is prohibited from enforcing the Alabama laws which prohibit same-sex marriage. This injunction binds the defendant and all his officers, agents, servants and employees, and others in active concert or participation with any of them, who would seek to enforce the marriage laws of Alabama which prohibit same-sex marriage.

Order of Jan. 26, 2015, at 4. The Strawser order is of more significance for Alabama probate judges than the orders in the Searcy case because Strawser is a case about issuing same-sex marriage licenses in Alabama. Therefore, it merits careful scrutiny.

The Strawser order tracks the language of Rule 65(d)(2), Fed. R. Civ. P.:

> Persons Bound. The order binds only the following who receive actual notice of it by personal service

4

or otherwise:

    (A) the parties;

    (B) the parties' officers, agents, servants, employees, and attorneys; and

    (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Since no Alabama probate judges are parties to the Strawser case (or to the Searcy case), the only question to resolve in terms of their being bound by the court's order of January 26 is whether they, or any of them, are officers, agents, servants or employees of the Attorney General or "are in active concert or participation" with the Attorney General or his officers, agents, servants, and employees. "[L]ike the Governor, the attorney general is an officer of the executive branch of government." Ex parte State ex rel. James, 711 So. 2d 952, 964 n.5 (Ala. 1998). See also McDowell v. State, 243 Ala. 87, 89, 8 So. 2d 569, 570 (1942) ("The Attorney General is a constitutional officer and a member of the Executive Department of the State government."); Art. V, § 112, Ala. Const. 1901 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, ...."). 

Probate judges are members of the judicial branch of government. "There shall be a probate court in each county

5

which shall have general jurisdiction of orphans' business, and of adoptions, and with power to grant letters testamentary, and of administration, and of guardianships, and shall have such further jurisdiction as may be provided by law ...." Art. VI, § 144, Ala. Const. 1901. Probate judges are elected to six-year terms by a vote of the people in each county. § 12-13-30, Ala. Code 1975.

Alabama has strict separation of powers between the branches of government. "The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Art. III, § 42, Ala. Const. 1901.

> In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.

Art. III, § 43, Ala. Const. 1901.

As a matter of constitutional and statutory law, therefore, Alabama probate judges are not officers, agents, or

servants of the Attorney General. The probate judges are members of the judicial branch; the Attorney General is a member of the executive branch. The Attorney General is bound by the constitutional command that "the executive shall never exercise the ... judicial powers." The probate judges are bound by the constitutional command that "the judicial shall never exercise the ... executive powers." A constitutional firewall separates the authority of the Attorney General from that of the probate courts. The probate judges are not in any sense agents or servants of the Attorney General

The only remaining question, therefore, to resolve in determining whether Alabama probate judges are bound by Judge Granade's orders in Searcy and Strawser is whether they are "in active concert or participation" with the Attorney General or any of his officers, agents, servants or employees in enforcing the Amendment or the Act. Again, the answer is "no" for the simple reason that neither the Attorney General nor any of his agents has any authority over the judges of probate. As independent constitutional officers of the judicial branch of government who are directly elected by the people and shielded from executive influence by Sections 42 and 43 of the Alabama Constitution, the judges of probate are

7

neither beholden to the Attorney General for their offices nor subject to his control in the execution of their duties.

The federal court in Mobile has no authority to ignore the internal structure of state government. How a state government structures its powers is "a decision of the most fundamental sort for a sovereign entity." Gregory v. Ashcroft, 501 U.S. 452, 460 (1991). A state has "constitutional responsibility for the establishment and operation of its own government." Id. at 462. "Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign." Id. at 460.

Finally, no probate judge was a defendant in the cases under discussion except for the Honorable Don Davis who was dismissed with prejudice before issuance of the court's orders. Judge Granade's orders apply to the parties to the case, but under a straightforward application of Rule 65(d)(2), Fed. R. Civ. P., those orders have no effect on the probate judges of Alabama. "A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." Martin v. Wilks, 490 U.S. 755, 762 (1989).

Furthermore, as stated in the Appendix, Judge Granade's

orders are improper because the Eleventh Amendment prohibits the Attorney General from being a defendant in these cases.

B.   <u>The probate judges in their judicial capacity do not have to defer to decisions of a federal district court</u>.

Having determined based on the above analysis that Alabama probate judges are not bound by Judge Granade's rulings in <u>Searcy</u> and <u>Strawser</u>, I would now like to give you a general perspective on the precedential effect in state courts of lower-federal-court decisions on constitutional questions. Because the United States Constitution provides that "the Judges in every State shall be bound thereby," Art. VI, cl. 2, U.S. Const., state judges are competent to adjudicate federal constitutional issues and indeed must do so when required in the exercise of properly acquired jurisdiction.

Because federal courts also adjudicate federal-law issues, the question has arisen whether state judges are in any sense bound by lower federal court decisions on constitutional questions. Almost universally the answer has been "no" for the simple reason that federal district and circuit courts have no appellate jurisdiction over state courts. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the

same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 131 S. Ct. 2020, 2033 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134-26 (3d ed. 2011)). Although decisions of state courts on federal questions are ultimately subject to review by the United States Supreme Court, 28 U.S.C. § 1257(a), as are decisions of federal courts, neither "coordinate" system reviews the decisions of the other. As a result, state courts may interpret the United States Constitution independently from and even contrary to the decisions of federal courts.

Numerous Alabama cases confirm this reasoning. "[I]n determining federal common law, we defer only to the holdings of the United States Supreme Court and our own interpretations of federal law. Legal principles and holdings from inferior federal courts have no controlling effect here, although they can serve as persuasive authority." Glass v. Birmingham So. R.R., 905 So.2d 789, 794 (Ala. 2004). See also Dolgencorp, Inc. v. Taylor, 28 So. 3d 737, 748 (Ala. 2009) (noting that "United States district court decisions are not controlling authority in this Court"); Ex parte Hale, 6 So. 3d 452, 462 (Ala. 2008), as modified on denial of reh'g (Oct. 10, 2008)

10

("[W]e are not bound by the decisions of the Eleventh Circuit."); Ex parte Johnson, 993 So. 2d 875, 886 (Ala. 2008) ("This Court is not bound by decisions of the United States Courts of Appeals or the United States District Courts."); Buist v. Time Domain Corp., 926 So. 2d 290, 297 (Ala. 2005) ("United States district court cases ... can serve only as persuasive authority."); Amerada Hess v. Owens-Corning Fiberglass, 627 So. 2d 367, 373 n.1 (Ala. 1993) ("This Court is not bound by decisions of lower federal courts."); Preferred Risk Mut. Ins. Co. v. Ryan, 589 So. 2d 165, 167 n.2 (Ala. 1991) ("Decisions of federal courts other than the United States Supreme Court, though persuasive, are not binding authority on this Court.").

A recent detailed study of the courts of all 50 states and the District of Columbia determined that 46 states and the District of Columbia adopt the position that the precedents of lower federal courts are not binding in their jurisdictions. Wayne A. Logan, A House Divided: When State and Lower Federal Courts Disagree on Federal Constitutional Rights, 90 Notre Dame L. Rev. 235, 280-81 (2014). The position of three other states is uncertain. Only one state (Delaware) defers to the constitutional decisions of lower federal courts. Id. at 281.

11

Federal courts have recognized that state-court review of constitutional questions is independent of the same authority lodged in the lower federal courts. "In passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court." <u>United States ex rel. Lawrence v. Woods</u>, 432 F.2d 1072, 1075 (7th Cir. 1970).

> Although consistency between state and federal courts is desirable in that it promotes respect for the law and prevents litigants from forum-shopping, there is nothing inherently offensive about two sovereigns reaching different legal conclusions. Indeed, such results were contemplated by our federal system, and neither sovereign is required to, nor expected to, yield to the other.

<u>Surrick v. Killion</u>, 449 F. 3d 520, 535 (3rd Cir. 2006).

The United States Supreme Court has acknowledged that state courts "possess the authority, absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law." <u>Asarco Inc. v. Kadish</u>, 490 U.S. 605, 617 (1989). Two justices of the United States Supreme Court in special writings have elaborated on this principle.

The Supremacy Clause demands that state law yield to

12

federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation. In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located.

Lockhart v. Fretwell, 506 U.S. 364, 375-76 (1993) (Thomas, J., concurring). See also Steffel v. Thompson, 415 U.S. 452, 482, n. 3 (1974) (Rehnquist, J., concurring) (noting that a lower-federal-court decision "would not be accorded the stare decisis effect in state court that it would have in a subsequent proceeding within the same federal jurisdiction. Although the state court would not be compelled to follow the federal holding, the opinion might, of course, be viewed as highly persuasive.").

For the above reasons, I am of the opinion that an Alabama probate judge may deliver his own considered opinion, subject to review, on the issues raised in Searcy and Strawser and is not required to defer to federal district and circuit court rulings on the same questions.

## IV. Conclusion

In fulfillment of my obligations as Administrative Head of the Unified Judicial System, I have herein offered you my considered guidance on how the recent orders from the United

13

States District Court in Mobile affect your duties as an Alabama probate judge. Because, as demonstrated above, Alabama probate judges are not bound by Judge Granade's orders in the Searcy and Strawser cases, they would in my view be acting in violation of their oaths to uphold the Alabama Constitution if they issued marriage licenses prohibited under Alabama law.

14

**APPENDIX**

The reasoning employed by Judge Granade in dismissing Governor Bentley with prejudice on August 28, 2014, namely that his general authority to enforce the laws was insufficient to make him a defendant, also applies to Attorney General Strange, who is the sole remaining defendant in both <u>Searcy</u> and <u>Strawser</u>.

I.
<u>How the Alabama Attorney General came to be</u>
<u>the sole defendant in each case</u>

A. <u>Searcy</u>

The complaint in <u>Searcy</u> named five defendants in both their individual and official capacities: Robert Bentley, Governor; Luther Strange III, Attorney General; Don Davis, Mobile County Judge of Probate; Catherine Donald, State Registrar of Vital Statistics; and Nancy Buckner, Commissioner of the Department of Human Resources.

On May 30, 2014, Judge Davis filed a motion to dismiss. He explained that in December 2011 Cari Searcy had filed in his court a petition for a step-parent adoption of the son of Kimberly McKeand. See § 26-10A-27, Ala. Code 1975. In April 2012, Judge Davis denied the petition on the ground that Alabama law did not recognize Searcy as McKeand's spouse.

15

Searcy appealed, and the Court of Civil Appeals affirmed. In re Adoption of K.R.S., 109 So. 3d 176 (2012). Once his decision was appealed, Judge Davis argued, he lost jurisdiction of the case and was thus unable to provide relief to the plaintiffs.

On June 3, 2014, Commissioner Buckner filed a motion to dismiss, alleging lack of standing, namely that Searcy had suffered no injury traceable to Buckner's actions that a court order could redress. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In her complaint Searcy alleged that Buckner "has the authority and power to ... amend birth certificates to reflect the adoption of a child." However, in her motion to dismiss, Buckner explained that such authority resides solely with the Department of Vital Statistics.

On June 6, 2014, Governor Bentley and Attorney General Strange filed a joint motion to dismiss. The motion argued that Governor Bentley's general authority over the executive branch was insufficient to name him as a defendant when he had no direct enforcement responsibility for the Amendment, the Act, or the adoption statute. Merely suing Governor Bentley as a representative of the State was no different than suing the State itself, an action forbidden by the Eleventh Amendment.

16

While seeking a dismissal of all claims against Governor Bentley, the Attorney General agreed to remain in the suit in his official capacity "to defend the validity of Alabama's marriage laws."

On June 24, 2014, the plaintiffs responded to the motions to dismiss. They volunteered to dismiss all claims against Davis, Donald, and Buckner and to dismiss the individual capacity claims against Bentley and Strange. However, they argued that the official-capacity claims against both Bentley and Strange should remain in the case. On July 14, 2014, Davis and the plaintiffs filed a joint stipulation for Davis's dismissal. On July 18, the court entered an order to dismiss Davis with prejudice if no other party objected by July 25.

On July 30, 2014, Magistrate Judge Katherine Nelson acknowledged the stipulation of dismissal of all claims against Davis, Donald, and Buckner. She also recommended granting Governor Bentley's motion to dismiss on the ground that his relationship to the acts complained of was "'too attenuated to establish that he was responsible for' implementation of the challenged laws." Report and Recommendation of July 30, 2014 (quoting Women's Emergency Network v. Bush, 323 F.3d 937, 949 (11th Cir. 2003)). Judge

17

Granade adopted the Magistrate's recommendation and, on August
28, dismissed with prejudice the claims against Bentley,
Buckner, and Donald. The only remaining defendant in the case
was the Attorney General in his official capacity.

B. Strawser

Because the complaint in Strawser named "the State of
Alabama" as the sole defendant, the Attorney General filed a
motion to dismiss on the ground of sovereign immunity. In an
order dated October 21, 2014, Magistrate Judge William E.
Cassady, providing free legal advice, advised the Strawser
plaintiffs

> that rather than filing a substantive response in
> opposition to the defendant's motion to dismiss,
> they may well desire to respond by filing a motion
> to dismiss the State of Alabama and substitute as
> the proper defendant ... Luther Strange, in his
> official capacity as the Attorney General of the
> State of Alabama.

The order contained a detailed footnote advising these pro-se
plaintiffs that "[t]he Eleventh Amendment bars suits against
an unconsenting State by one of its citizens." The footnote
included as supporting authority three citations and
parenthetical supporting quotations from United States Supreme
Court cases. Order of Oct. 21, 2014, at 1 n.1. In a second
footnote, Magistrate Cassady continued the plaintiffs' legal

18

education by explaining that "'official-capacity actions for prospective relief are not treated as actions against the State.'" Order of Oct. 21, 2014, at 2 n.2 (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985)). Dutifully following this advice from the court, the plaintiffs on November 13, 2014 filed a "Motion to Amend Complaint and Change Defendant." The Attorney General did not object to the motion.

Thus, by dismissal of all defendants except the Attorney General in <u>Searcy</u>, and the substitution, with court assistance, of the Attorney General for the State of Alabama in <u>Strawser</u>, Luther Strange in his official capacity became the sole defendant in each case.

II.
<u>The Attorney General is not
a proper defendant in these cases</u>

The issuance of marriage licenses in Alabama is controlled by Chapter 1 ("Marriage") of Title 30 ("Marital and Domestic Relations"). Section 30-1-9, Ala. Code 1975, states: "No marriage shall be solemnized without a license. Marriage licenses may be issued by the judges of probate of the several counties." The duty is discretionary because certain prerequisites must be satisfied before a license may be issued, such as, where applicable, the age and parental

consent requirements of § 30-1-4 & -5, Ala. Code 1975. The probate judge must maintain a register of all licenses issued, § 30-1-12, Ala. Code 1975, which is to include certificates of solemnization received from those who perform weddings. § 30-1-13, Ala. Code 1975. "It is the duty of the judge of probate to give notice to the district attorney of all offenses under this chapter." § 30-1-18, Ala. Code 1975. "No marriage license shall be issued in the State of Alabama to parties of the same sex." § 30-1-19(d), Ala. Code 1975.

By contrast to the exclusive statutory duty of probate judges to issue and record marriage licenses, and to monitor this process, including solemnizations, for offenses, the Attorney General has no duties in this area.

As an officer of the State, the Attorney General shares the immunity of the State from private law suits in federal court. "[T]he Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest." Summit Medical Associates, P.C. v. Pryor, 180 F. 3d 1326, 1336 (11th Cir. 1999). "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Hawaii v. Gordon, 373 U.S. 57, 58 (1963). An exception exists

20

to this rule for actions taken by state officials that violate the Constitution. "The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 102 (1984). This principle, first articulated in <u>Ex parte Young</u>, 209 U.S. 123 (1908), "has not been provided an expansive interpretation." <u>Pennhurst</u>, 465 U.S. at 102. Actions for damages are precluded, but generally prospective actions for declaratory and injunctive relief are permitted.

Nonetheless, a key requirement of an <u>Ex parte Young</u> action against a state official is that "such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." 209 U.S. at 157. The Court elaborated:

> "In the present case, as we have said, neither of the State officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the State, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the

21

State was, in a general sense, charged with the
execution of all its laws, and the latter, as
attorney general, might represent the State in
litigation involving the enforcement of its
statutes. That would be a very convenient way for
obtaining a speedy judicial determination of
questions of constitutional law which may be raised
by individuals, but it is a mode which cannot be
applied to the States of the Union consistently with
the fundamental principle that they cannot, without
their assent, be brought into any court at the suit
of private persons."

209 U.S. at 157 (quoting <u>Fitts v. McGhee</u>, 172 U.S. 516, 530
(1899)).

The situation described in <u>Ex parte Young</u> is exactly what
has occurred in this case. The Alabama Attorney General does
not hold a "special relation to the particular statute alleged
to be unconstitutional," nor is he "expressly directed to see
to its enforcement." Those duties and responsibilities lie
with the judges of probate in the judicial branch. In the
passage that immediately precedes the one quoted in <u>Ex parte
Young</u>, the Court in <u>Fitts</u> underscored this point:

It is to be observed that neither the Attorney
General of Alabama nor the Solicitor of the Eleventh
Judicial Circuit of the State appear to have been
charged by law with any special duty in connection
with the act of February 9, 1895.

....

There is a wide difference between a suit against
individuals, holding official positions under a
State, to prevent them, under the sanction of an

22

> unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a State merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the State.

Fitts v. McGhee, 172 U.S. at 529-30. Recapping its discussion of Fitts, the court in Ex parte Young stated: "As no state officer who was made a party bore any close official connection with the [act at issue], the making of such officer a party defendant was a simple effort to test the constitutionality of such act in that way, and there is no principle upon which it could be done." 209 U.S. at 156 (emphasis added).

Making the Attorney General, who is not the official chiefly responsible for enforcing the marriage laws, the sole defendant in this case was a convenient means of making the State of Alabama the defendant, a methodology condemned by Ex parte Young as unconstitutional under the Eleventh Amendment. Because both Searcy and Strawser were in substance actions against the State rather than against one of its officers, the United States district court lacked jurisdiction and its judgment is void. The tenor of Judge Granade's orders indicates that she intends the orders to be applicable to all

state officials merely because the Attorney General is the defendant. Such an assumption violates the Eleventh Amendment. "Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend <u>Young</u> beyond what the Supreme Court has intended and held." <u>Children's Healthcare Is A Legal Duty v. Deters</u>, 92 F. 3d 1412, 1416 (6th Cir. 1996).

The Tenth Circuit in a very similar case came to the same conclusion. Two women who desired to be married to each other filed an action against the Governor and the Attorney General of Oklahoma seeking to have that state's marriage amendment declared unconstitutional.  The Tenth Circuit held that they lacked standing to sue these officials. "[T]he Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce." <u>Bishop v. Oklahoma</u>, 333 F. App'x 361, 365 (10th Cir. 2009) (unpublished). Noting that marriage licenses in Oklahoma were issued by district-court clerks who were part of the judicial branch, the court stated: "Because recognition of marriages is within the administration of the judiciary, the executive branch of Oklahoma's government has no authority to

issue a marriage license or record a marriage." 333 F. App'x at 365. Stating that "[t]hese claims are simply not connected to the duties of the Attorney General" and citing the specificity requirement of Ex parte Young, the court ordered dismissal of the claims against the Attorney General for lack of subject-matter jurisdiction under the Eleventh Amendment. Id.

In a later published case the Tenth Circuit noted that the holding in Bishop that the Attorney General was not a proper defendant in a challenge to Oklahoma's prohibition on same-sex marriage "turned on the conclusion that marriage licensing and recognition in Oklahoma were 'within the administration of the judiciary.'" Kitchen v. Herbert, 755 F.3d 1193, 1202 (10th Cir. 2014). The parallels with Searcy and Strawser are too obvious to require elaboration.

The Attorney General's agreement to litigate this case with himself as the sole defendant cannot confer subject-matter jurisdiction that is otherwise not present. "The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties." American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17-18 (1951) (emphasis added). "'It

25

needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case.'" <u>Id.</u> at 18 n.17 (quoting <u>People's Bank v. Calhoun</u>, 102 U.S. 256, 260-61 (1880)). See also <u>Boumatic, L.L.C. v. Idento Operations, BV,</u> 759 F. 3d 790, 793 (7th Cir. 2014) ("Litigants cannot confer subject-matter jurisdiction by agreement or omission ...."); <u>SmallBizPros, Inc. v. MacDonald</u>, 618 F. 3d 458, 464 n.4 (5th Cir. 2010). ("[P]arties cannot confer jurisdiction by agreement where it otherwise would not lie ....").

Further, because the Attorney General neither caused the plaintiffs' alleged injuries nor is able to redress them, the parties also lack standing to sue him as a defendant. "To have standing the plaintiffs must demonstrate injury in fact, causation, and redressability." <u>I.L. v. Alabama</u>, 739 F.3d 1273, 1278 (11th Cir. 2014). Accordingly, the federal court in Mobile lacked jurisdiction on this basis also. Alabama law agrees with these propositions:

> "Actions or opinions are denominated 'advisory,'" and, therefore, not justiciable, ... "<u>where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive</u>." E. Borchard, <u>Declaratory Judgments</u> 31 (1934) (emphasis added). "'Actions for declaratory judgments brought by individuals to test or challenge the propriety of public action often fail

on this ground, ... because the ... public officer
or other <u>person selected as a defendant</u> has ... no
special duties in relation to the matters <u>which</u>
<u>would be affected by any eventual judgment</u>.'" <u>Rogers</u>
<u>v. Alabama Bd. of Educ.</u>, 392 So.2d 235, 237 (Ala.
Civ. App. 1980) (emphasis added) (quoting E.
Borchard, <u>Declaratory Judgments</u> 76 (2d ed. 1941)).
"'<u>The absence of adversary</u> or the <u>correct</u> adversary
parties is in principle <u>fatal</u>. A mere difference of
opinion or disagreement or argument on a legal
question affords inadequate ground for invoking the
judicial power.'" <u>Id.</u> (emphasis added).

<u>Stamps v. Jefferson County Bd. of Educ.</u>, 642 So. 2d 941, 944

(Ala. 1994) (emphasis in original).

## End of Appendix

27

Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CARI D. SEARCY and KIMBERLY MCKEAND, individually and as parent and next friend of K.S., a minor, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NO. 14-0208-CG-N |
| | ) | |
| LUTHER STRANGE, in his capacity as Attorney General for the State of Alabama, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on Plaintiffs' motion for contempt and request for immediate relief. (Doc. 71). Plaintiffs report that "the Honorable Don Davis has failed to comply with this Court's January 23, 2015 Order." According to the motion:

> On this date, at 10:10 a.m. CST, Honorable Don Davis, Probate Judge in Mobile County, Alabama, had not opened the marriage license division of the Mobile County Probate Court. The Honorable Don Davis has not given a reason why the marriage license division is closed on this particular day, and he has not stated as to when the office will reopen.

(Doc. 71, p. 1-2). Plaintiffs request that this court hold Davis in contempt, to order law enforcement to open the marriage license division of Mobile County Probate Court, and to impose sanctions.

After reviewing the Plaintiffs' motion, the court finds that Plaintiffs have not shown that Davis has failed to comply with this court's order. On January 23, 2015,

1

this court declared that ALA. CONST. ART. I, § 36.03 (2006) and ALA. CODE 1975 § 30-1-19 are unconstitutional and enjoined defendant Luther Strange, in his capacity as Attorney General for the State of Alabama, from enforcing those laws. (Doc. 54). Upon motion by the Plaintiffs, this court further clarified the January 23, 2015 order stating that:

> … [A] clerk who chooses not to follow the ruling should take note: the governing statutes and rules of procedure allow individuals to intervene as plaintiffs in pending actions, allow certification of plaintiff and defendant classes, allow issuance of successive preliminary injunctions, and allow successful plaintiffs to recover costs and attorney's fees. … The preliminary injunction now in effect thus does not require the Clerk to issue licenses to other applicants. But as set out in the order that announced issuance of the preliminary injunction, the Constitution requires the Clerk to issue such licenses. As in any other instance involving parties not now before the court, the Clerk's obligation to follow the law arises from sources other than the preliminary injunction.

(Doc. 65, p. 3 quoting Brenner v. Scott, 2015 WL 44260 at *1 (N.D. Fla. Jan 1, 2015)). Probate Judge Don Davis is not a party in this case[1] and the Order of January 23, 2015, did not directly order Davis to do anything. Judge Davis's obligation to follow the Constitution does not arise from this court's Order. The Clarification Order noted that actions against Judge Davis or others who fail to follow the Constitution could be initiated by persons who are harmed by their failure to follow the law. However, no such action is before the Court at this time.

Plaintiffs have also offered no affidavit or other evidence to show that they have been prevented from applying for the adoption or that their adoption application was wrongfully denied after this court's January 23, 2015, Order.

---

[1] Judge Davis was originally named as a defendant, but by stipulation of the parties (Doc. 29) was dismissed from the case.

2

Nothing in Plaintiffs' motion would compel this court to order law enforcement to open the marriage license division of Mobile County Probate Court or impose sanctions.  Plaintiffs have offered no authority by which this court can hold Davis in contempt or order any of the relief sought by Plaintiffs.  Accordingly, Plaintiffs' motion for contempt and immediate relief (Doc. 71), is **DENIED**.

      **DONE** and **ORDERED** this 9th day of February, 2015.

/s/  Callie V. S. Granade

UNITED STATES DISTRICT JUDGE
